**IN THE DISTRICT COURT OF JEFFERSON PARISH**
**LOUISIANA, 24th JUDICIAL DISTRICT**

DIV. N

**YORI HENRY FAIRLEY**
**ESTATE OF DION HENRY**

PLAINTIFF

**VERSUS**

634921

**OCHSNER CLINIC**
**DR. VINCENT ADOLPH**
**DR. RICHELLE MONIER**

DEFENDANTS

---

## CIVIL COMPLAINT FOR WRONGFUL DEATH IN VIOLATION OF LOUISIANA STATUTES CC ART. 2315.2 AND RS 14:30-A(6)

### PARTIES

1.  Plaintiff in this action is Yori Henry Fairley, mother and legal next of kin of 2-year-old Dion Henry, deceased. The Plaintiff and the estate of Dion Henry will be represented by legal representative,  Willie L. Henry, father of plaintiff, and grandfather of Dion Henry, until an attorney is appointed by the court.  Both plaintiff and legal representative  reside at the Henry family home, 1318 22nd Street, Gulfport, MS 39501.

2.  Defendant  Ochsner Medical Clinic, whose process can be served at 1514 Jefferson Highway, New Orleans, Louisiana 70121.

3.  Defendant Vincent Adolph, whose process can be served at Ochsner,

1.


EXHIBIT
A

1514 Jefferson Highway, New Orleans, Louisiana 70121.

4.   Defendant  Richelle Monier, whose process can be served at Ochsner,

1514 Jefferson Highway, New Orleans, Louisiana 70121.

## JURISDICTION

1.   This court has jurisdiction of RS 14:30, first degree murder.  **Louisiana
Statute RS 14:30-A(6), states, "when the offender has the specific intent
to kill or to inflict great bodily harm while engaged in the distribution,
exchange, sale, or purchase, or any attempt thereof, of a controlled
dangerous substance listed in Schedules I, II, III, IV, or V of the
Uniformed Controlled Dangerous Substances Law.**

2.   Amendment 14 of the United States Constitution gives plaintiff the
guaranteed Right that the state of Louisiana will arrest and prosecute anyone
for poisoning 2-year-old Dion Henry with any of the dangerous controlled
substances listed in Schedules I, II, III, IV, or V of the Uniformed
Controlled Dangerous Substances Law, and to determine exactly what type
of poison and how much was pumped into the baby's brain.

## CONTEXT OF CONSPIRACY TO
## MURDER 2-YEAR-OLD DION HENRY

Defendants did murder 2-year-old Dion Henry by tranquilizing him with

2.

Ativan while he was still under the influence of general anesthesia, and while Dion Henry was under the influence of the Ativan and general anesthesia the defendants administered him a toxic dosage of barbiturates. This concomitant of the three Central Nervous System Depressants amplified each other and caused damage to the respiratory center of his brain, and killed him. The defendants as professionals in the use of the drugs did not administer these dangerous drugs in an effort to help Dion Henry, which proves defendants intended to kill Dion Henry with the drugs. Any doctor would know better than give a baby three nerve sedating drugs, one behind the other. Other than defendants being racist type serial killers, they had no reason to murder a 2-year-old baby, except to harvest his organs. Defendants did request the donation of Dion Henry's organs, and then presented false statements concerning the request. Once the family attempted to secure counsel to represent same, defendants did conspire with the family's prospective attorney to falsify two medical opinions, in an accessory after the fact, to the murder of 2-year-old Dion Henry.

## MOTIVE

Defendants did murder Dion Henry to harvest his organs to retrieve his heart for another pediatric patient. Defendants did therapy on the heart of

3.

Dion Henry, even while they destroyed the rest of his body.  The heart of 2-year-old Dion Henry remained unremarkable.

## OPPORTUNITY

Defendants chose Dion Henry to murder because he was Black, in which defendants thought the family would not have enough sense to realize what they had done.  Defendants plan was to secure a signature of donation from Dion Henry's mother by proving to her that Dion Henry was in fact brain dead as defendants falsely stated on September 20, 2005, defendants stated as follows, on 9-20-05, "it appears Dion is brain dead, we will do two brain tests, and if both results confirm brain death then he will be disconnected from life support, and the only way he could remain on life support is the family sign an organ donation card, at which time he could remain on life support until a recipient could be found."  This statement was completely false and was intended to play with the emotions of the family.  The first brain test on Dion Henry was not performed until September 21, 2005, which came back completely normal, no damage whatsoever.  Defendants had plenty of time to reverse their actions, when their plan to obtain a signature failed on 9-20-05, defendants had time to abandon their plan to murder 2-year-old Dion Henry, yet they continued on

4.

with their plan to murder, and on 9-21-05, administered Dion Henry a poisonous dose of Controlled Substances. Defendants continued to request Plaintiff donate the baby's organs, stating it would be the right thing to do. Defendants wanted Plaintiff to do the right thing after they had murdered her baby. Defendants' plan to get away with murdering 2-year-old Dion Henry, was that after they obtained the signature, it meant the family agreed with them in everything they presented, which meant there would be no suspicion, and without suspicion, there would be no need for an autopsy, and the poison would go undetected. Defendants would get away with murder. Ochsner has some of the best doctors in the world, and after they reviewed this death, they seen the toxicity of the drugs and knew for a fact there was no way on earth for that baby to withstand such a massive dosage of poison, that had no antidote. Yet all they could do was to present false statements. The doctors used the trust of the family to murder a baby, and the worst part to this horrific murder is, Dion Henry was not the first victim of defendants, and if the State of Louisiana does not stop them, he will not be the last. Doctors in Louisiana are murdering people, people that put their trust in them. The doctors are using trust as an opportunity to murder.

5.

## <u>COMPLAINT</u>

1.   On September 21, 2005, defendants, Adolph and Monier did willfully and with malice kill two-year-old Dion Henry, with the Dangerous Controlled Substances, Ativan and barbiturates, by pumping both drugs into his brain, while his brain was completely normal, in a futile attempt to harvest his organs.  Defendant Ochsner provided the drugs to murder Dion Henry.

2.   On September 21, 2005, the Ativan entered Dion Henry's brain.

3.   On September 21, 2005, the barbiturates entered Dion Henry's brain.

4.   The defendants, (Ochsner, Adolph, Monier) knew for a fact that Ativan contain alcohol.

5.   The defendants (Ochsner, Adolph, Monier) as doctors knew that Ativan combined with barbiturates is fatal to infants.

6.   On September 21, 2005, Dion Henry was still under the influence of general anesthesia.

7.   Defendants (Ochsner, Adolph, Monier) did not have consent to give Dion Henry, Ativan.

8.   Defendants (Ochsner, Adolph, Monier) did not have consent to give Dion Henry, barbiturates.

6.

9.   Defendants  (Ochsner, Adolph, Monier) did not inform  plaintiff of the use of Ativan .

10.   Defendants (Ochsner, Adolph, Monier) did not inform plaintiff of the dangers of Ativan.

11.   Defendants  (Ochsner, Adolph, Monier) did  not inform plaintiff of the fact the Ativan would enter Dion Henry's brain.

12.   Defendants (Ochsner, Adolph, Monier) did not inform plaintiff of the use of barbiturates.

13.   Defendants (Ochsner, Adolph, Monier) did not inform plaintiff that the barbiturates would enter Dion Henry's brain.

14.   On September 21, 2005, Dion Henry's first brain study results  read normal, no damage.

15.   On September 21, 2005,  Defendant (Monier) administered 2-year-old Dion Henry, Ativan, after his brain showed normal.

16.   In less than 12 hours after the administration of Ativan, Defendants (Adolph, Monier) administered 2-year-old Dion Henry, barbiturates, after his brain showed normal.

17.   Defendants (Adolph, Monier) administered Dion Henry a dosage of barbiturates totaling >27 ug/ml.

18.   >27 ug/ml of barbiturates caused vasoconstriction on 2-year-old Dion Henry which constricted the blood flow to his brain.

19.   On September 22, 2005, Dion Henry's second brain study results read diffused.

20.   Between  September 21, 2005 and September 22, 2005, defendants (Adolph, Monier) gave Dion Henry, Ativan, and  barbiturates.

21.   Between September 21, 2005 and September 22, 2005, Dion Henry's brain went from being completely normal to diffused.

22.   Between September 21, 2005 and September 22, 2005, defendants (Adolph, Monier) increased the barbiturate to toxic levels.

23.   Any amount of barbiturates above 20 ug/ml as of September 21, 2005, was toxic for Dion Henry.

24.   The reference range of barbiturates for Dion Henry is determined by his age, weight, and general condition.

25.   As of  September 21, 2005, >20 ug/ml of barbiturates was toxic for Dion Henry, according to his age, weight, and medical condition.

26.   Ativan contains alcohol.

27.   The  toxicology report  certified that >20 ug/ml of barbiturates was toxic for Dion Henry.

8.

28.   There is no antidote for barbiturate poisoning.

29.   At toxic levels barbiturates causes the cerebral blood flow to slow.

30.   Dion Henry had   low blood pressure at the time  defendants (Adolph, Monier) administered him barbiturates.

31.   On 9-21-05,  Defendants (Adolph, Monier) knew Dion Henry had low blood pressure.

32.   The barbiturates  as administered   by defendants (Adolph, Monier) on 9-21-05, to 9-22-05, lowered Dion Henry's blood pressure.

33.   Dion Henry died from a lack of blood to his central nervous system.

34.   Defendants (Ochsner, Adolph, Monier)  did   not   have  a  legitimate medical reason to give Dion Henry, Ativan.

35.   Defendants (Ochsner, Adolph, Monier) did   not   have   a  legitimate medical reason to give 2-year-old Dion Henry, barbiturates.

36.   Defendants (Ochsner, Adolph, Monier) did   not   have a legitimate medical reason to give 2-year-old Dion Henry >27 ug/ml of barbiturates.

37.   Defendants (Adolph, Monier) knew   that combining   two  Central Nervous System Depressants would be fatal for Dion Henry.

38.   Defendants (Adolph, Monier) knew that a concomitant of Central Nervous System Depressants would damage the Medulla Oblongata of 2-

9.

year-old Dion Henry.

39.   On September 21, 2005, Dion Henry started to come from under the influence of the general anesthesia that was administered on 9-20-05.

40.   On September 21, 2005, defendant Monier tranquilized Dion Henry with Ativan.

41.   Ativan is a tranquilizer.

42.   General anesthesia is a central nervous system depressant.

43.   Ativan is a central nervous system depressant.

44.   Barbiturates are central nervous system depressants.

45.   Three central nervous system depressants at once is too much drugs for a 2-year-old baby, post-surgery with low blood pressure.

46.   On September 21. 2005, to September 22, 2005, defendant Monier kept Dion Henry's entire central nervous system sedated.

47.   The Central Nervous System consists of the brain, spinal cord, and nerves throughout the body.

48.   Defendants (Ochsner, Adolph, Monier) knew Dion Henry was over-sedated.

49.   All drugs that cause Central Nervous System Depression potentiate the actions of all other Central Nervous System depressants.

10.

50.    At toxic levels  the barbiturates  as administered by the defendants, (Adolph, Monier) shut down the entire Central Nervous System of 2-year-old Dion Henry, and had his entire body paralyzed.

51.    Defendants (Ochsner) falsified documents to cover-up the murder of Dion Henry.

52.    At >27 ug/ml, barbiturates did poison  2-year-old Dion Henry.

53.    Ochsner's reference  range of, up to  40 ug/ml of barbiturates for a 2-year-old, weighting less  than  25  pounds,  with  low  blood  pressure, recovering  from  intestinal  surgery,  and  still  under  general  anesthesia   is falsified.

54.    From  September 20, 2005, to  September  22,  2005, defendants (Ochsner, Adolph, Monier) had Dion Henry under the influence of three Controlled Substances, Anesthesia, Ativan, and barbiturates.

55.    Defendant  (Ochsner)  presented  false  statements  to plaintiff concerning  the  name  of  who  called  the  Louisiana  Organ  Procurement Agency for the organs of 2-year-old Dion Henry.

56.    Defendants (Adolph, Monier) killed 2-year-old Dion Henry with a lethal dose of barbiturates, other than Phenobarbital.

57.    Defendants (Adolph, Monier) treated Dion Henry for a brain disorder

11.

immediately after his brain study results showed completely normal, with drugs that will cause the brain to be damaged.

58. Dion Henry did not have seizures while at Ochsner.

59. Defendants (Adolph, Monier) treated Dion Henry without consent for a brain disorder, that did not exist.

60. Plaintiff consented to intestinal surgery and general anesthesia.

61. Defendants committed assault and battery with intent to kill by putting poison into Dion Henry's brain.

62. Central nervous system depressants should not be combined with any medication or substance that causes drowsiness.

63. If combined central nervous system depressants can be fatal.

64. Central nervous system depressants slow normal brain function.

65. Barbiturates can cause respiratory depression.

66. Barbiturates can cause respiratory failure.

67. Dion Henry was not required to automatically have an autopsy.

68. Dion Henry was instructed to be taken straight to the emergency room upon his arrival at Ochsner.

69. Defendant (Adolph) did not take Dion Henry to the emergency room as instructed.

12.

70.   Dion Henry arrived at Ochsner with a normal brain.

71.   Dion Henry's mother was with him everyday, and stayed at Ochsner from September 20, 2005 to September 25, 2005.

72.   Defendants (Adolph, Monier) knew for a fact Dion Henry was dead as of September 23, 2005.

73.   Defendants (Adolph, Monier) continued to  perform  therapy on the heart of Dion Henry, and monitored his heart after defendants knew for a fact he was dead.

74.   Defendants  (Adolph, Monier) murdered 2-year-old Dion Henry to harvest his heart.

75.   Defendant Ochsner concealed the name of who called the Louisiana Organ Procurement Agency concerning Dion Henry's organs.

76.   The heart of 2-year-old Dion Henry remained unremarkable.

77.   Defendants (Ochsner, Adolph, Monier) conspired with plaintiff's prospective attorney to create false medical opinions to assist defendants to get away with murdering 2-year-old Dion Henry.

78.   At toxic levels, central nervous system depressants inhibit all natural healing process of the body.

79.   Barbiturates are respiratory depressants.

13.

80. The therapeutic range of Phenobarbital for pediatrics for anticonvulsant is 3-6 mg/kg/ per day in single or divided doses.

81. The therapeutic range of Phenobarbital for pediatrics for acute convulsions is 4-6 mg/kg per day for 7-10 days to achieve a blood level of 10-15 mcg/ml, or 15 mg/kg per day.

82. The therapeutic range of Phenobarbital for pediatrics for status epilepticus is 15-20 mg/kg given over a 10 to 15 minute period.

83. Barbiturates potentiate the toxic effects of many other drugs.

84. The dosage of barbiturates should be reduced in geriatric and debilitated patients.

85. Dion Henry was diagnosed with an intestinal obstruction before he arrived at Ochsner.

86. Dion Henry had x-rays showing the obstruction, when he arrived at Ochsner.

87. Dion Henry had lab results showing electrolyte imbalances, when he arrived at Ochsner.

88. Dion Henry had a surgical emergency when he arrived at Ochsner.

89. Dion Henry's resting heart rate was less than 100 beats per minute.

90. Dion Henry arrived at Ochsner, alive.

14.

## MOTION FOR APPOINTMENT OF COUNSEL

In light of the facts surrounding the conspiracy of the family's prospective attorney, the family of 2-year-old Dion Henry incorporates this motion in the interest of Justice that this court appoint an attorney to represent the family with the best interest of the family. The estate of Dion Henry will pay all costs.

## CONTEXT OF MURDER AND HOW TO PROVE DEFENDANTS INTENDED TO MURDER 2-YEAR-OLD DION HENRY

The state should first look into the fact that defendants did not have consent to give Dion Henry Ativan or barbiturates. Then the state should look at the effects Ativan had on Dion Henry while he was still under the influence of general anesthesia. Then the state should look at the effects the barbiturates had on Dion Henry which was given in less than 12 hours after the Ativan was given. In less than 36 hours defendants had Dion Henry under the influence of three central nervous system depressants, all the while he was trying to recover from intestinal surgery, and low blood pressure. Then the state should look at the effects the drugs had on the Gamma Amino Butyric Acid (GABA), of the central nervous system. Then the state should look at the effects each drug had on the functions of the

15.

central nervous system.  Then the state should look the effects  the drugs combined, had on Dion Henry.   Then the state should take into consideration the surgery and Dion Henry's blood pressure, the general anesthesia, the Ativan, and then the effects of 17 ug/ml of barbiturates, then the effects of >23 ug/ml of barbiturates, then the effects of >27 ug/ml of barbiturates.  Once the state fully investigate the effects of the concomitant of the dangerous drugs, the state will find that the drugs paralyzed  Dion Henry's entire central nervous system, slowed his cerebral blood flow, is fatal when combined, is fatal to asthma patients, cause respiratory depression, cause hypotension, cause renal failure, cause hepatic necrosis, effect the cerebral cortex including the  brainstem reticular formation, penetrate the spinal cord and inhibit transmission at synapses causing muscular paralysis, children are especially sensitive to barbiturates, cause coma, cause death, cause ischemia, cause blood to pool in veins as result of venous dilation.  The state should look at the fact defendants used the drugs in the same manner as Lethal Injection and Euthanasia. The state should look at the fact defendants used the same drugs used for Lethal Injection and Euthanasia.   Then the state should look at the amount of poison defendants gave to Dion Henry, along with the fact Dion Henry did not have

16.

a medical condition that required barbiturates, along with the fact the family

did not give consent for Dion Henry to be given barbiturates. And finally,

the state should convene with the family to gather evidence concerning false

statements that are intended to conceal the murder conspiracy, and to obtain

all evidence to prove accessories after the fact, of the murder of 2-year-old

Dion Henry.

## <u>SUMMARY</u>

This is the death of a 2-year-old baby, that died in the midst of drugs

that entered his brain at the same time his brain was damaged.  Therefore

the family request that all findings of each and every element of the

complaint be concluded on national television.  The estate of Dion Henry

expressly emphasize that the state reveal it's finding in this murder to the

world, as the effects of the drugs to be verified by each and every doctor

around the world. The estate of Dion Henry expressly empathize that this

case not be kept under cover.   All evidence found on barbiturates confirm

the facts of the toxicology report, that >20 ug/ml of barbiturates were toxic

for Dion Henry.  And the mere fact that defendants denied this fact when

they knew for a fact that they pumped >27 ug/ml of the poison into the

baby's brain, automatically shows their guilt.  This would further explain

17.

why defendants would go as far as to conspire to create false medical opinions. If the drugs was a mistake, defendants should have come forward to state that it was a mistake.  By defendants trying to conceal the facts surrounding this death shows they have something to hide.  The defendants poisoned 2-year-old Dion Henry with a combination of Ativan and barbiturates, of which they did not have consent from the family to administer. Defendants administered the drugs to kill Dion Henry.  And, the manner that defendants carried out the murder, by knowing that an autopsy did not have to be performed, that would conceal the poison, shows they are professional killers, and has killed before.  The defendants are serial killers, they must be stopped, and the public must be warned.    >27 ug/ml of barbiturates poisoned the body of 2-year-old Dion Henry.

## DAMAGES

By reasons of the facts stated above plaintiff has suffered both physically and emotionally by the sudden and suspicious death of her son. **Therefore,** plaintiff request a jury trial, which such damages to be determined by.

18.

Yori Fairley, Pro Se
1318 22nd Street
Gulfport, MS 39501
228-863-3707

Willie L. Henry, Pro Se
1318 22nd Street
Gulfport, MS 39501
228-863-3707

19.

A TRUE COPY OF THE ORIGINAL
ON FILE IN THIS OFFICE.

DEPUTY CLERK
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON

(101) Citation: ISS CIVIL COMPLAINT FOR WRONGFUL DEATH;     060825-5561-3



## 24TH JUDICIAL DISTRICT COURT
## PARISH OF JEFFERSON
## STATE OF LOUISIANA

YORI HENRY FAIRLEY, DION HENRY ESTATE OF
    versus                  Case: 634-921    Div: "N"
OCHSNER CLINIC, VINCENT ADOLPH DR, RICHELLE      P 1 YORI HENRY FAIRLEY
MONIER DR

To: OCHSNER CLINIC
1514 JEFFERSON HIGHWAY
JEFFERSON LA 70121

\ PARISH OF JEFFERSON

You are hereby summoned to comply with the demand contained in the **CIVIL COMPLAINT FOR WRONGFUL DEATH** of which a true and correct copy accompanies this citation, or make an appearance either by filing a pleading or otherwise, in the 24th Judicial District Court in and for the Parish of Jefferson, State of Louisiana, within **FIFTEEN (15) CALENDAR** days after the service hereof, under penalty of default.

This service was requested by attorney YORI HENRY FAIRLEY and was issued by the Clerk Of Court on the 25th day of August, 2006.

                                          
Kelly B Picou, Deputy Clerk of Court for
Jon A. Gegenheimer, Clerk Of Court

---

(101) Citation: ISS CIVIL COMPLAINT FOR WRONGFUL DEATH;     060825-5561-3

### SERVICE INFORMATION

Received on the _____ day of _____, _____ and on the _____ day of
_____, _____ served the above named party as follows:

PERSONAL SERVICE on the party herein named _____

DOMICILIARY SERVICE on the party herein named by leaving the same at his domicile in this parish in the hands of _____, a person of suitable age and discretion residing in said domicile and whose name and other facts connected with this service, I learned by interrogating the said person, said party herein being absent from his residence at the time of said service.

RETURNED: Parish of _____ this _____ day of _____

SERVICE: $ _____      BY: _____
MILEAGE: $ _____      Deputy Sheriff
    TOTAL: $ _____

IMAGED SEP 05 '06



29/21



JUDICIAL DIVISION
JEFFERSON PARISH
SHERIFF'S OFFICE

2006 AUG 28  A 11: 27

DATE RECEIVED ____ AUG 3 0 2006 ____ DATE RETURNED ____ AUG 3 0 2006

DATE SERVED ____ AUG 3 0 2006

SERVICE AFFECTED OR REASON UNSERVED:

X PERSONAL ____ DOMICILIARY ____

NOT AT THIS ADDRESS PER ____

UNABLE TO SERVE AFTER MAKING ____ ATTEMPTS

____ APT. NUMBER

____ OR NUMBER / VACANT

J. BROWN
Deputy, Sheriff of Jefferson Parish

(101) Citation: ISS CIVIL COMPLAINT FOR WRONGFUL DEATH;                    060825-5562-1

### 24TH JUDICIAL DISTRICT COURT
### PARISH OF JEFFERSON
### STATE OF LOUISIANA

YORI HENRY FAIRLEY, DION HENRY ESTATE OF
versus                                          Case: 634-921    Div: "N"
OCHSNER CLINIC, VINCENT ADOLPH DR, RICHELLE      P 1 YORI HENRY FAIRLEY
MONIER DR

To: VINCENT ADOLPH DR
1514 JEFFERSON HIGHWAY
JEFFERSON LA 70121

PARISH OF JEFFERSON

You are hereby summoned to comply with the demand contained in the **CIVIL COMPLAINT FOR
WRONGFUL DEATH** of which a true and correct copy accompanies this citation, or make an
appearance either by filing a pleading or otherwise, in the 24th Judicial District Court in and for the
Parish of Jefferson, State of Louisiana, within **FIFTEEN (15) CALENDAR** days after the service
hereof, under penalty of default.

This service was requested by attorney YORI HENRY FAIRLEY and was issued by the Clerk Of
Court on the 25th day of August, 2006.

Kelly B Picou, Deputy Clerk of Court for
Jon A. Gegenheimer, Clerk Of Court

---

(101) Citation: ISS CIVIL COMPLAINT FOR WRONGFUL DEATH;                    060825-5562-1

### SERVICE INFORMATION

Received on the _____ day of _____, _____ and on the _____ day of
_____, _____ served the above named party as follows:

PERSONAL SERVICE on the party herein named _____.

DOMICILIARY SERVICE on the party herein named by leaving the same at his domicile in this parish
in the hands of _____, a person of suitable age and discretion
residing in said domicile and whose name and other facts connected with this service, I learned by
interrogating the said person, said party herein being absent from his residence at the time of said
service.

RETURNED: Parish of _____ this ____ day of _____

SERVICE: $ _____        BY: _____
MILEAGE: $ _____             Deputy Sheriff
TOTAL: $ _____

29/15          IMAGED SEP 05 06

DATE RECEIVED AUG 3 0 2006 DATE RETURNED AUG 3 0 2006
        DATE SERVED          AUG 3 0 2006
    SERVICE AFFECTED OR
 X PERSONAL        DOMICILIARY
 ___ NOT AT THIS ADDRESS
 ___ UNABLE TO SERVE AFTER
 ___ OTHER

(101) Citation: ISS CIVIL COMPLAINT FOR WRONGFUL DEATH;          060825-5563-9

24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

**DIV. N**
JUDGE
HANS J. LILJEBERG

YORI HENRY FAIRLEY, DION HENRY ESTATE OF
versus
OCHSNER CLINIC, VINCENT ADOLPH DR, RICHELLE
MONIER DR

Case: 634-821   Div: "N"
P 1 YORI HENRY FAIRLEY

To: RICHELLE MONIER DR
1514 JEFFERSON HIGHWAY
JEFFERSON LA 70121

PARISH OF JEFFERSON

You are hereby summoned to comply with the demand contained in the **CIVIL COMPLAINT FOR WRONGFUL DEATH** of which a true and correct copy accompanies this citation, or make an appearance either by filing a pleading or otherwise, in the 24th Judicial District Court in and for the Parish of Jefferson, State of Louisiana, within **FIFTEEN (15) CALENDAR** days after the service hereof, under penalty of default.

This service was requested by attorney YORI HENRY FAIRLEY and was issued by the Clerk Of Court on the 25th day of August, 2006.

Kelly B Picou, Deputy Clerk of Court for
Jon A. Gegenheimer, Clerk Of Court

(101) Citation: ISS CIVIL COMPLAINT FOR WRONGFUL DEATH;          060825-5563-9

**SERVICE INFORMATION**

Received on the _____ day of _____, _____ and on the _____ day of
_____, _____ served the above named party as follows:

PERSONAL SERVICE on the party herein named _____.

DOMICILIARY SERVICE on the party herein named by leaving the same at his domicile in this parish in the hands of _____, a person of suitable age and discretion residing in said domicile and whose name and other facts connected with this service, I learned by interrogating the said person, said party herein being absent from his residence at the time of said service.

RETURNED: Parish of _____ this _____ day of _____

SERVICE: $ _____          BY: _____
MILEAGE: $ _____          Deputy Sheriff
TOTAL: $ _____

IMAGED SEP 0 5 '06



DATE RECEIVED AUG 3 0 2006 _ DATE RETURNED AUG 3 0 2006
DATE SERVED AUG 3 0 2006
SERVICE AFFECTED OR
X PERSONAL
____NOT AT THIS ADDRESS
____UNABLE TO SERVE
____OTHER: